LA W - NSD

General Chapter

IN THE MATTER OF:

JUDGE:
VOLUME: 124

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| RETENTION SCHEDULE | |
|---|---|
| PERMANENT | |
| DISPOSAL NOT AUTHORIZED | |
| RETAIN 40 YEARS | |
| RETAIN 20 YEARS | X |

UNAUTHORIZED REMOVAL, DESTRUCTION, MUTILATION OR OBLITERATION OF ANY FILE OR DOCUMENT FILED IN THE CUSTODY OF THE CLERK CONSTITUTES A FELONY UNDER TITLE 18, SECTION 2071 (a) OF THE U.S. CODE.

1124

18726-BK010

Steven R. Wainess (CA Bar No. 106645)
**SULMEYER, KUPETZ, BAUMANN & ROTHMAN**
A Professional Corporation
300 South Grand Avenue, 14th Floor
Los Angeles, California 90071
213/626-2311

Attorneys for Irving Sulmeyer,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GRAND CHEVROLET, INC. and related entities including:<br><br>1.  GRAND MOTORS, INC.;<br><br>2.  GRAND WILSHIRE FINANCE CORPORATION;<br><br>3.  GRAND RIZAL FINANCE CORPORATION;<br><br>4.  GRAND WILSHIRE CAPITAL, INC.,<br><br>　　　　　Debtors. | Case No. LA 88-16590-CA<br>Chapter 11<br><br>[Substantively Consolidated With<br>Case No. LA 88-16654-CA<br>Case No. LA 88-16450-CA<br>Case No. LA 88-16451-CA<br>Case No. LA 88-19447-CA)]<br><br>**NOTICE OF LODGEMENT OF EXECUTED SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND THE FEDERAL DEPOSIT INSURANCE CORPORATION IN SUPPORT OF TRUSTEE'S MOTION FOR FINAL DECREE**<br><br>DATE:　October 6, 1997<br>TIME:　10:00 a.m.<br>PLACE:　Courtroom 1675<br>　　　　Edward R. Roybal Federal<br>　　　　Building and Courthouse<br>　　　　255 E. Temple Street<br>　　　　Los Angeles, CA 90012 |

**NOTICE IS HEREBY GIVEN** that on September 29, 1997, Irving Sulmeyer, chapter 11 trustee ("Trustee") and the Federal Deposit Insurance Corporation as Statutory Successor to the Resolution Trust Corporation as Receiver for Imperial Federal

1  Savings Association ("FDIC") executed the Settlement Agreement
2  attached hereto pursuant to the court's order that was entered on
3  January 14, 1997 ("Order"), approving the November 25, 1996 motion
4  ("Motion"). The Motion requested authority from the court,
5  pursuant to Bankruptcy Rule 9019, for approval of the proposed
6  compromise between the Trustee and the FDIC. The Order authorized
7  the Trustee to enter into the Settlement Agreement, or an
8  agreement which was substantially similar to the proposed
9  Settlement Agreement. The only relatively minor difference
10 between the attached executed copy of the Settlement Agreement and
11 the version attached to the Motion is the following language
12 located at the end of Paragraph 8 of the Settlement Agreement:

> Nothing in this paragraph or in this Settlement Agreement is intended to waive, discharge or release any claims, demands, cause or causes of action, actions, debts, liens, judgments, suits, proceedings, obligations, attorneys fees, costs, damages, losses, and liabilities of any character, kind or nature, whether accrued or unaccrued, known or unknown, suspected or unsuspected, fixed or contingent, whether in law, equity or otherwise, and whether under tort, contract, warranty or otherwise, which it may ever have had, now have or hereafter can, shall or may have arising out of any matter, transaction, or occurrence, the FDIC may have against officers or directors of Grand Chevrolet, Inc., Grand Motors, Inc., Grand Wilshire Finance Corporation, Grand Rizal Finance Corporation or Grand Wilshire Capital, Inc.

24  **PLEASE TAKE FURTHER NOTICE** that this notice of lodgement
25 is submitted in support of the Trustee's Motion for Final Decree
26 which is scheduled for hearing on October 6, 1997 at 10:00 a.m.

```
 1  before the Honorable Lisa Hill Fenning in Courtroom 1675, located
 2  at the Edward R. Roybal Federal Building and Courthouse, 255 E.
 3  Temple Street, Los Angeles, CA 90012.
 4
 5  DATED:  Sept 30, 1997        SULMEYER, KUPETZ, BAUMANN & ROTHMAN
                                 A Professional Corporation
 6
 7                               By  /s/ Steven R. Wainess
                                     Steven R. Wainess
 8                                   Attorneys for Irving Sulmeyer,
                                     Chapter 11 Trustee
 9
```

FS2/MAIN:\DMS\SRW\NOT\0274525.01
09/30/97 1:33pm

3

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release ("Settlement Agreement") is made and dated as of this 29th day of September, 1997 by and between Federal Deposit Insurance Corporation as Statutory Successor to the Resolution Trust Corporation as Receiver for Imperial Federal Savings Association ("FDIC"), and Irving Sulmeyer, Chapter 11 Trustee ("Trustee") of the substantively consolidated bankruptcy cases of Grand Chevrolet, Inc. ("GC"), Grand Motors, Inc. ("GM"), Grand Wilshire Finance Corporation ("GWF"), Grand Rizal Finance Corporation ("GRF"), and Grand Wilshire Capital, Inc., Chapter 11 Case No. LA 88-16590-CA (collectively referred to as the "Grand Estates" or the "Debtors").

## RECITALS

WHEREAS, FDIC is a corporation organized under the laws of the United States of America; and

WHEREAS, Imperial Federal Savings Association is the assignee of all assets previously owned by Imperial Savings Association ("ISA"); and

WHEREAS, on August 27, 1987, ISA entered into a Master Agreement for Purchase and Sale of Conditional Sales Contracts (the "August 27, 1987 Purchase Agreement") and a Motor Vehicle Conditional Sales Contract Service Agreement (the "August 27, 1987 Servicing Agreement"), both with GWF; and

WHEREAS, pursuant to the August 27, 1987 Purchase Agreement, ISA purchased from GWF certain motor vehicle conditional sales contracts (the "ISA Contracts"), and pursuant to the August 27, 1987 Servicing Agreement ISA retained GWF to administer the servicing and collection activities with respect to the ISA Contracts; and

WHEREAS, on or about July 6, 1988, ISA purportedly filed a UCC-1 ("UCC-1") against GWF asserting that its collateral consisted of all motor vehicle sales contracts and related documents, proceeds and payments thereunder; and

WHEREAS, on July 25, 1988, ISA purportedly terminated the Servicing Agreement with GWF; and

WHEREAS, on or about August 4, 1988, (the "Petition Date"), GWF and GRF filed for protection under Chapter 11 of Title 11 of the United States Code and on or about August 11, 1988, Irving Sulmeyer was appointed trustee under Section 1104 of the Bankruptcy Code. In or about June 1990, the bankruptcy estates of Grand Chevrolet, Inc., Grand Motors, Inc., Grand Wilshire Finance Corporation, Grand Rizal Finance Corporation, and Grand Wilshire Capital, Inc. (the "Debtors") were substantively consolidated as Case No. LA 88-16590-CA (Substantively Consolidated

000001

FS2/MAIN:\DMS\SRU\AGT\0247885.06
09/18/97 12:45pm                        1

Under Chapter 11 with Case Nos. LA 88-16654-CA, LA 88-16450-CA, LA 88-16451-CA and LA 88-19447-CA). Since that date, Irving Sulmeyer has been duly qualified and acting Trustee in the consolidated Chapter 11 cases. The cases are pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"); and

WHEREAS, in September 1988, ISA and the Trustee entered into a Purchase and Sale Agreement whereby ISA purchased certain assets of the Trustee (including servicing rights to certain motor vehicle contracts) and whereby the Trustee retained an equity participation in the motor vehicle contacts (the "September 1988 Agreement"); and

WHEREAS, around April 7, 1989, ISA and the Trustee entered into an Agreement re Release of Vehicles and Grant of Security Interest whereby the Trustee released his interest in 610 repossessed vehicles based on storage charge liens pending a final judicial determination of all rights in exchange for ISA's grant to the Trustee of a security interest in the vehicles or their proceeds (the "April 7, 1989 Agreement"); and

WHEREAS, an order was entered on February 1, 1990 approving a stipulation for release of certain unmatched, unidentified vehicles to the Trustee wherein the parties agreed that ISA would have no interest in those vehicles unless ISA commenced an action prior by April 30, 1991 (the "February 1990 Stipulation"); and

WHEREAS, ISA timely filed five separate proofs of claim in the Bankruptcy Proceedings against each of the Debtors (the "Proofs of Claim"); and

WHEREAS, the Trustee objected to the Proofs of Claim; and

WHEREAS, the FDIC's predecessor, the Resolution Trust Corporation, in its capacity as the receiver of ISA, filed an amended proof of claim on or about January 10, 1995 (the "Amended Proof of Claim"); and

WHEREAS, the Trustee has not agreed to the allowance of the Amended Proof of Claim; and

WHEREAS, the parties have certain unresolved claims against each other relating to the subject of the Amended Proof of Claim; and

WHEREAS, the Trustee may have in his possession or control certain books and records relating to ISA's motor vehicle conditional sales contracts (the "Motor Vehicle Contracts"); and

000005

WHEREAS, the Trustee and the FDIC now desire to enter into a settlement agreement and to release any and all claims the parties may have against each other, including, but not limited to, the resolution of their disputes relating to any prior agreements between the parties, including, but not limited to, any agreements relating to the Motor Vehicle Contracts, the August 27, 1987 Purchase Agreement, the August 27, 1987 Servicing Agreement, the ISA Contracts, the UCC-1, the Amended Proof of Claim, the September 1988 Agreement, the April 7, 1989 Agreement and the February 1990 Stipulation;

NOW, THEREFORE, in consideration of the above recitals and subject to the mutual promises contained in this Settlement Agreement and in full and complete settlement of all claims and disputes between them arising out of the Grand Estates, including, but not limited to, the resolution of their disputes relating to any prior agreements between the parties, including, but not limited to, any agreements relating to the Motor Vehicle Contracts, the August 27, 1987 Purchase Agreement, the August 27, 1987 Servicing Agreement, the ISA Contracts, the UCC-1, the Amended Proof of Claim, the September 1988 Agreement, the April 7, 1989 Agreement and the February 1990 Stipulation and all other claims which have been asserted or could have been asserted between the parties, the Trustee and the FDIC hereby agree as follows:

1. <u>Trustee's Consideration to FDIC in Exchange for Settlement</u>.

In exchange for the agreements, covenants and releases contained herein, the Trustee shall give the following consideration to the FDIC on the Effective Date (defined below in ¶ 6):

a. <u>Allowance of FDIC's Reduced Proof of Claim</u>: The Trustee agrees that the FDIC will have an allowed, unsecured, non-contingent, non-priority claim against the Debtors' Estates in the amount of $33,500,000.00 or in an amount equal to all other allowed, unsecured, non-contingent, non-priority claims against the Debtors' Estates, whichever is less.

b. <u>Trustee's Assignment of Certain Assets to FDIC</u>: The Trustee herewith assigns to the FDIC and the FDIC shall take from the Trustee on the Effective Date hereunder (as that term is defined below in ¶ 6) all of the Trustee's right, title and interest in the following assets (the "FDIC's Assets"):

(1) All of the Trustee's right, title and interest, if any, in promissory notes related to Motor Vehicle Contracts, Motor Vehicle Contracts and leases relating to Motor Vehicle Contracts in which ISA asserts an interest, as expressly described and set forth in Exhibit A attached hereto and incorporated herein by reference. This specifically includes, without limitation, release by the Trustee of any security interest based on promissory notes (retail installment contracts) used by the Debtors' buyers to finance down payments for automobile purchases financed by ISA which are listed on Exhibit A;

(2) All of the Trustee's right, title and interest, if any, in vehicles now in the possession and/or control of the Trustee which are listed in Exhibit A, including all certificates of title (also known as "the Pink Slips"). This assignment specifically excludes any cash received by the Trustee, prior to the Effective Date, relating to promissory notes, vehicle contracts, vehicle leases, et cetera, which are identified in the Motor Vehicle Contracts listed in Exhibit A;

(3) All computer tapes, programs, and software (to the extent they exist) relating to and/or used in the servicing of the Motor Vehicle Contracts which are listed in Exhibit A, subject to the Trustee's right to keep copies for use regarding other contracts;

(4) Any and all books and records of the Trustee pertaining to or relating to the purchasing, selling and servicing of the Motor Vehicle Contracts listed in Exhibit A; and

(5) Any and all rights of the Trustee to service the Motor Vehicle Contracts listed in Exhibit A and to repossess, preserve, maintain, rehabilitate and resell all vehicles repossessed pursuant to the ISA Contracts.

2. **Trustee's Release of Right to Equity**.

The FDIC and the Trustee agree that, contrary to the terms of the September 1988 Agreement, the Trustee shall not be entitled to receive, and hereby releases any right or claim to, any equity as that term is defined below, in the ISA Contracts after the Effective Date (as that term is defined in paragraph 6 below). For purposes hereof, "equity" shall mean the excess, if any, of total actual collections from each of the ISA Contracts, including amounts received from the disposition of each vehicle, over the total amount paid by ISA for each of the ISA Contracts plus interest on said amount at the rate allowed under each vehicle contract plus all reasonable and necessary costs of servicing and collecting each said contract, including but not limited to reasonable professional fees, if permitted by contract.

3. **FDIC's Assets Excluded in the Trustee's Assignment**.

The FDIC does not take from the Trustee, and the parties agree that the following items are expressly excluded from this Settlement Agreement:

a. Any causes of action or any avoidance actions and any monies or assets recovered by the Trustee through any litigation, avoidance actions, claims, demands or settlement, even if they relate to the Motor Vehicles Contracts or any vehicle listed in Exhibit A;

b. Cash and other proceeds on hand, if any, which may be related to Motor Vehicle Contracts or any vehicle listed in Exhibit A which were received prior to the Effective Date (as that term is defined in paragraph 6 below);

       c.    Cash and other proceeds on hand, if any, related to other motor vehicle contracts or the sale of other motor vehicles which were received prior to the Effective Date (as that term is defined in paragraph 6 below);

       d.    Certain motor vehicle contracts listed on Exhibit B which the Trustee contends belong to the Debtors' estates.

       e.    Any assets owned by the estates which are not related to Motor Vehicle Contracts listed on Exhibit A, including proceeds from assets which are not related to the Motor Vehicle Contracts.

    4.    **FDIC's Consideration to Trustee in Exchange for Settlement**.

In exchange for the agreements, covenants and releases contained herein, the FDIC shall give the following consideration to the Trustee on the Effective Date (defined below in paragraph 6):

       a.    **FDIC's Payment to the Trustee**: On the Effective Date (defined below in paragraph 6), the FDIC will pay the Trustee the lump sum amount of $925,000.00 in exchange for the FDIC's Assets, and this money shall be wire transferred to the Trustee unless different written instructions are received by the FDIC. The Trustee shall provide wire transfer instructions to the FDIC at least five (5) days before the Effective Date.

       b.    **FDIC's Reduced Proof of Claim**: The FDIC will reduce its Amended Proof of Claim which presently asserts an unsecured, contingent claim in the amount of $67,853,647 in exchange for the Trustee's allowance of the FDIC's unsecured, non-contingent, non-priority proof of claim against the Debtors' Estates in the amount of $33,500,000.00 or in an amount equal to all other allowed, unsecured, non-contingent, non-priority claims against the Debtors' Estates, whichever is less. Other than proofs of claim identified in this Agreement, the FDIC further represents that no other proofs of claim have been filed by the FDIC and that no further proofs of claims will be filed by the FDIC. If requested by the Trustee, the FDIC will execute a separate stipulation amending the FDIC's Amended Proof of Claim to reflect an unsecured, non-contingent, non-priority proof of claim against the Debtors' Estates in the amount of $33,500,000.00 or in an amount equal to all other allowed, unsecured, non-contingent, non-priority claims against the Debtors' Estates, whichever is less.

       c.    **FDIC's Assignment of Certain Assets to Trustee**: The FDIC assigns to the Trustee and the Trustee shall take from the FDIC on the Effective Date hereunder (as that term is defined in paragraph 6 below) all of the FDIC's right, title and interest, if any, in the following assets (the "Trustee's Assets"):

       (1)    All of the FDIC's right, title and interest, if any, in promissory notes related to motor vehicle contracts, motor vehicle contracts and motor vehicle leases in which the Trustee asserts an interest, as expressly described

and set forth in Exhibit B attached hereto and incorporated herein by reference. This specifically includes, without limitation, release by the FDIC of any security interest against the motor vehicle contracts which are listed on Exhibit B. This assignment specifically excludes any cash received by the FDIC, prior to the Effective Date, relating to the promissory notes, vehicle contracts, vehicle leases, et cetera, relating to the motor vehicle contracts listed in Exhibit B;

    (2) All computer tapes, programs, and software (to the extent they exist) relating to and/or used in the servicing of the motor vehicle contracts which are listed in Exhibit B, subject to the FDIC's right to keep copies for use regarding other contracts;

    (3) Any and all books and records of the FDIC pertaining to or relating to the purchasing, selling and servicing of the motor vehicle contracts listed in Exhibit B; and

    (4) Any and all rights of the FDIC to service the motor vehicle contracts listed in Exhibit B and to repossess, preserve, maintain, rehabilitate and resell all vehicles repossessed pursuant to the Trustee's Contracts.

  5. **Assets Excluded in the FDIC's Assignment.**

The Trustee does not take from the FDIC, and the parties agree that the following items are expressly excluded from this Settlement Agreement:

    a. Any causes of action or any litigation and any monies or assets recovered by the FDIC through any litigation, actions, claims, demands or settlement, even if they relate to the Trustee's Contracts or any vehicle listed in Exhibit B;

    b. Proceeds on hand which may be related to the Trustee's Contracts or any vehicle listed in Exhibit B which were received prior to the Effective Date (as that term is defined in paragraph 6 below);

    c. Proceeds on hand related to the Motor Vehicle Contracts or the sale of Motor Vehicles Contracts which were received prior to the Effective Date (as that term is defined in paragraph 6 below);

    d. Certain Motor Vehicle Contracts listed on Exhibit A which the FDIC contends belong to the FDIC.

    e. Any assets owned by the FDIC which are not related to the Trustee's Contracts listed on Exhibit B, including proceeds from assets which are not related to the Trustee's Contracts.

6. **Effective Date**.

    a. The Effective Date is the tenth business day after all of the following have occurred: ten (10) days after an order is entered authorizing the Trustee to compromise all disputes with the FDIC, after appropriate notice to creditors and parties in interest pursuant to Bankruptcy Rule 2002 and 9019 pursuant to the terms of the Settlement Agreement without an appeal of such order having been taken or a motion for reconsideration or other relief filed; or, if an appeal from the order is taken or a motion for reconsideration or other relief is filed, ten (10) days after such appeal shall have finally been determined from the highest court from which review is sought in such a manner as to permit the consummation of the settlement contemplated by this Settlement Agreement substantially in accordance with all of its terms and provisions.

7. **Trustee's Release of FDIC**.

    Except as otherwise expressly provided in this Settlement Agreement, and as necessary for the full and proper enforcement of all of the provisions of this Settlement Agreement, the Trustee, for himself, his representatives, agents, employees, successors and assigns, hereby releases and forever discharges the FDIC, its administrators, executors, attorneys, representatives, agents, employees, successors and assigns from and against any and all claims, demands, cause or causes of action, actions, debts, liens, judgments, suits, proceedings, obligations, attorneys' fees, costs, damages, losses, and liabilities of any character, kind or nature, whether accrued or unaccrued, known or unknown, suspected or unsuspected, fixed or contingent, whether in law, equity or otherwise, and whether under tort, contract, warranty or otherwise, which he may ever have had, now have or hereafter can, shall or may have arising out of any matter, transaction, or occurrence, connected with or incidental to the dealings between the parties hereto prior to the Effective Date hereof, including, without limitation on the generality of the foregoing, any and all claims, demands and cause or causes of action, including, but not limited to, the resolution of all disputes relating to any prior agreements between the parties, including, but not limited to, any agreements relating to the Motor Vehicle Contracts, the August 27, 1987 Purchase Agreement, the August 27, 1987 Servicing Agreement, the ISA Contracts, the UCC-1, the Amended Proof of Claim, the September 1988 Agreement, the April 7, 1989 Agreement and the February 1990 Stipulation or which could have been reflected in the aforementioned matters.

8. **FDIC's Release of the Trustee**.

    Except as otherwise expressly provided in this Settlement Agreement, and as necessary for the full and proper enforcement of all of the provisions of this Settlement Agreement, the FDIC, for itself, its administrators, executors, attorneys, representatives, agents, employees, successors and assigns, hereby releases and forever discharges the Trustee, his attorneys, representatives, agents, employees, successors and assigns, as well as GRAND CHEVROLET, INC., GRAND MOTORS, INC., GRAND WILSHIRE FINANCE CORPORATION, GRAND RIZAL FINANCE

CORPORATION and GRAND WILSHIRE CAPITAL, INC. from and against any and all claims, demands, cause or causes of action, actions, debts, liens, judgments, suits, proceedings, obligations, attorneys' fees, costs, damages, losses, and liabilities of any character, kind or nature, whether accrued or unaccrued, known or unknown, suspected or unsuspected, fixed or contingent, whether in law, equity or otherwise, and whether under tort, contract, warranty or otherwise, which it may ever have had, now have or hereafter can, shall or may have arising out of any matter, transaction, or occurrence, connected with or incidental to the dealings between the parties hereto prior to the Effective Date hereof, including, without limitation on the generality of the foregoing, any and all claims, demands and cause or causes of action arising out of or related to the Grand Estates, including, but not limited to, the resolution of all disputes relating to any prior agreements between the parties, including, but not limited to, any agreements relating to the Motor Vehicle Contracts, the August 27, 1987 Purchase Agreement, the August 27, 1987 Servicing Agreement, the ISA Contracts, the UCC-1, the Amended Proof of Claim, the September 1988 Agreement, the April 7, 1989 Agreement and the February 1990 Stipulation or which could have been reflected in the aforementioned matters. Nothing in this paragraph or in this Settlement Agreement is intended to waive, discharge or release any claims, demands, cause or causes of action, actions, debts, liens, judgments, suits, proceedings, obligations, attorneys fees, costs, damages, losses, and liabilities of any character, kind or nature, whether accrued or unaccrued, known or unknown, suspected or unsuspected, fixed or contingent, whether in law, equity or otherwise, and whether under tort, contract, warranty or otherwise, which it may ever have had, now have or hereafter can, shall or may have arising out of any matter, transaction, or occurrence, the FDIC may have against officers or directors of Grand Chevrolet, Inc., Grand Motors, Inc., Grand Wilshire Finance Corporation, Grand Rizal Finance Corporation or Grand Wilshire Capital, Inc.

9. **Waiver of Known and Unknown Claims.**

Except as otherwise expressly provided in this Settlement Agreement, the parties acknowledge, agree and represent that they may have claims arising out of or related to the Grand Estates against the other party hereto of which they have no knowledge or suspicion at the present time. Except as otherwise expressly provided in this Settlement Agreement, and as necessary for the full and proper enforcement of all of the provisions of this Settlement Agreement, and as further consideration and inducement, the parties hereby waive the provisions of section 1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each party to this Settlement Agreement further waives the benefit of any statute, rule or doctrine of any jurisdiction whatsoever, of effect similar to the

said Section 1542 of the Civil Code of the State of California as it may apply to claims or causes of action arising out of or related to the Grand Estates.

It is the mutual intention of the parties to this Settlement Agreement, which they herewith recognize and acknowledge, to resolve, settle and dispose of, fully and completely, without further dispute or litigation, whether accrued or unaccrued, known or unknown, suspected or unsuspected, fixed or contingent, any and all claims, demands, liabilities, and any claim or claims for relief which were brought or could have been brought between the parties, past, present and future, directly or indirectly arising out of, or relating in any way to the Debtors and/or the parties, including, but not limited to, the transactions, events, acts, errors, omissions and/or conduct all disputes relating to any prior agreements between the parties, including, but not limited to, any agreements relating to the Motor Vehicle Contracts, the August 27, 1987 Purchase Agreement, the August 27, 1987 Servicing Agreement, the ISA Contracts, the UCC-1, the Amended Proof of Claim, the September 1988 Agreement, the April 7, 1989 Agreement and the February 1990 Stipulation or which could have been reflected in the aforementioned matters.

The parties hereto acknowledge that this Settlement Agreement includes all injuries and damages to persons and/or property whatsoever, including economic injuries, whether such injuries and damages be known or unknown, foreseen or unforeseen, and whether they are patent, latent or occur later, with respect to the Debtors or the Estates and/or the parties.

10. **Obligations Created by Settlement Agreement Survive Releases**.

NOTWITHSTANDING ANY OTHER PROVISION OF THIS SETTLEMENT AGREEMENT, THE PARTIES DO NOT RELEASE OR DISCHARGE ONE ANOTHER WITH RESPECT TO THEIR RESPECTIVE OBLIGATIONS ARISING UNDER THIS SETTLEMENT AGREEMENT.

11. **Delivery of Assets**.

The parties shall have the right [within sixty (60) days of the Effective Date] to review the other parties' records and determine which records are relevant to the FDIC's Assets and the Trustee's Assets. The parties shall be personally responsible for any expenses necessary to review and transport these records from the respective storage facilities of the other party.

12. **Additional Covenants:**

a. Each party shall, from time to time, and with no further liability to the Trustee or the FDIC, execute and deliver or cause to be executed and delivered, such additional instruments, assignments, endorsements, papers and documents as the other party may at any time reasonably request for the purpose of carrying out this Settlement Agreement and the assignment provided for herein.

      b.    The Trustee agrees, for the purposes of implementing the provisions of this Settlement Agreement, to execute and deliver to the FDIC after the Effective Date (so long as the Debtors' bankruptcy cases are open), one or more irrevocable powers of attorney and any other documents reasonably necessary (collectively, the "POA's"), to enable the FDIC or any assignee, whether identified or not at the time of the Effective Date, to release liens and to change the registered or legal ownership on the Pink Slips at the DMV without the necessity of obtaining any further or additional consent or documentation from the Trustee.

### 13. Failure to Compromise.

In the event this Settlement Agreement is not approved, this Settlement Agreement is null and void, without force and effect and may not be used as evidence for or against the Trustee or the FDIC.

### 14. No Admission of Liability.

The Settlement Agreement and/or the execution of performance of any of its terms shall not constitute or be construed as an admission of any liability or wrongdoing whatsoever on the part of any party. Both parties acknowledge that each of them has consistently taken the position that he or it has no liability whatsoever to the other.

### 15. Disclaimers.

      a.    The Trustee and the FDIC agree that they do not assume any liabilities of the other whatsoever, whether incurred on his/its own behalf, or incurred by principals, agents, and assigns, no matter to whom owing or how incurred. Any and all liabilities of the parties, subject to the provisions of this Settlement Agreement, continue to be the obligations of the respective parties. This Settlement Agreement is subject to approval by Bankruptcy Court order, which Order shall provide that the Trustee and the FDIC will not be liable for any liabilities of the other, subject to the provisions of this Settlement Agreement.

      b.    The Trustee does not warrant in any aspect the FDIC's Assets assigned hereunder. The FDIC's Assets are transferred "as is".

      c.    The FDIC does not warrant in any aspect the Trustee's Assets assigned hereunder. The Trustee's Assets are transferred "as is".

### 16. Representations of the FDIC.

      a.    **Legal Status.** The FDIC is a valid existing corporation, duly organized and in good standing under the laws of the United States of America.

      b.   <u>Authority</u>. The execution and delivery of this Settlement Agreement by the FDIC and the performance by the FDIC of the obligations hereunder to be performed have been duly authorized by all necessary corporate action.

17. <u>Severability</u>.

      a.   If any provision, or part thereof, of this Settlement Agreement is invalid or unenforceable under any law, such provision, or part thereof, is and will be totally ineffective to that extent, but the remaining provisions, or part thereof, will be unaffected.

      b.   The provisions of this Settlement Agreement have been examined, negotiated, drafted and revised by counsel for each party hereto and no provision hereof shall be interpreted against any party thereto by virtue of the drafting of this Settlement Agreement.

18. <u>Attorneys' Fees and Costs</u>.

In the event of any action at law or in equity between the parties in relation to this Settlement Agreement, the non-prevailing party, in addition to any other sums which such party may be called upon to pay, will pay to the other party all costs and expenses of such action or suit, including reasonable attorneys' fees.

19. <u>Waivers</u>.

No waiver of any term, provision or condition of this Settlement Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition, or of any other term, provision or condition of this Settlement Agreement.

20. <u>Notice</u>.

Any notice or other communication of this Settlement Agreement provided or permitted to be given by one party to the other must be in writing and given by personal delivery or by depositing the same in the United States mail, certified mail, return receipt requested, addressed to the other party to be notified, postage prepaid. For purposes of notice, the addresses of the parties shall be as follows:

    FDIC:    Federal Deposit Insurance Corporation
                 P.O. Box 9349
                 Newport Beach, California 92660
                 Attention:   William Elsbury, Esq.
                              William Schneider, Esq.

|           | and |
|-----------|-----|
|           | Stephanie L. Krafchak, Esq.<br>Krafchak & Associates<br>2049 Century Park East, Suite 1200<br>Los Angeles, California 90067 |
| Trustee:  | Chapter 11 Trustee for Grand Chevrolet, Inc. et al.<br>Sulmeyer, Kupetz, Baumann & Rothman<br>A Professional Corporation<br>300 South Grand Avenue, 14th Floor<br>Los Angeles, California 90071<br>Attention: Irving Sulmeyer, Esq.<br>          Steven R. Wainess, Esq. |

The above addresses may be changed from time to time by written notice from one party to the other.

21. **Right to Assign**.

The FDIC shall have the right to assign, transfer or sell any of the FDIC's Assets transferred herein, without notice to or consent obtained from the Trustee, once this Settlement Agreement has been consummated.

The Trustee shall have the right to assign, transfer or sell any of the Trustee's Assets transferred herein, without notice to or consent obtained from the FDIC, once this Settlement Agreement has been consummated.

22. **Amendments in Writing**.

Any amendment to this Settlement Agreement must be in writing and signed by duly authorized representatives of both parties.

23. **Entire Agreement**.

This Settlement Agreement shall constitute the entire Settlement Agreement between the parties.

24. **Bankruptcy Court Approval, Governing Law and Venue**.

This Settlement Agreement is expressly subject to Bankruptcy Court approval, and once approved, shall be governed by and construed in accordance with federal bankruptcy law and the laws of the State of California. All judicial proceedings between the parties to this Settlement Agreement shall be heard in the United States Bankruptcy Court for the Central District of California.

25. **Agreement Will Not Be Construed Against One Party**.

All of the parties and their respective counsel have mutually contributed to the preparation of this Settlement Agreement. Accordingly, no provision of this Settlement Agreement shall be construed against any party because that party, or its counsel, drafted that provision.

26. **Headings**.

The headings and captions used in this Settlement Agreement are for convenience only, are not a part of this Settlement Agreement, and shall not alter or determine any rights or obligations under this Settlement Agreement.

27. **Counterparts**.

This Settlement Agreement may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same Settlement Agreement.

28. **Capacity**.

Irving Sulmeyer is entering into this Settlement Agreement in his representative capacity only as Chapter 11 Trustee of the Debtors' Estates.

Federal Deposit Insurance Corporation is entering into this Settlement Agreement in its capacity only as Statutory Successor to the Resolution Trust Corporation as Receiver for Imperial Federal Savings Association.

**IN WITNESS WHEREOF**, the parties have executed this Settlement Agreement on the date first above written.

> IRVING SULMEYER, CHAPTER 11 TRUSTEE
> FOR GRAND CHEVROLET, INC. AND
> RELATED ENTITIES, INCLUDING: GRAND
> MOTORS, INC., GRAND WILSHIRE FINANCE
> CORPORATION, GRAND RIZAL FINANCE
> CORPORATION AND GRAND WILSHIRE
> CAPITAL, INC., DEBTORS.
>
> By: _____
> Irving Sulmeyer, Chapter 11 Trustee
> for Grand Chevrolet, Inc. and its
> Related Debtor Entities

FEDERAL DEPOSIT INSURANCE
CORPORATION IN ITS CAPACITY AS
STATUTORY SUCCESSOR TO RESOLUTION
TRUST CORPORATION AS RECEIVER FOR
IMPERIAL FEDERAL SAVINGS
ASSOCIATION.

By: *[signature]*
Title: G. Micheal Newton, Regional Director
Western Service Center

FS2/MAIN:\DMS\SRW\AGT\0247885.06
09/18/97 12:45pm

14

GWG BK 010179