LAW OFFICES OF KAREN L. GOLDSTEIN
Karen L. Goldstein, Esq. (SBN 229965)
1645 N. Vine Street, Suite 306
Los Angeles, CA 90028
Telephone: 888.445.6313
Facsimile: 323.467.7229
Email: kgoldstein@klgcriminaldefense.com

Attorney for Defendant
EMINIANO REODICA

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION—LOS ANGELES

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EMINIANO REDOICA, *et al*.,<br><br>Defendant. | Case No. CR 94-121-SJO<br><br>**DEFENDANT'S *SUPPLEMENTAL* MOTION TO WITHDRAW HIS GUILTY PLEA; MR. REODICA'S AMENDED DECLARATION.**<br><br>Hearing Date: December 5, 2016<br>Time: 10:00am<br>Courtroom: 1<br><br>HONORABLE JUDGE S. JAMES OTERO |

TO THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND ASSISTANT UNITED STATES ATTORNEY, RUTH C. PINKEL:

    Defense counsel, Karen L. Goldstein, on behalf of Eminiano Reodica, hereby submits Defendant's Supplemental Motion to Withdraw His Guilty Plea. This Petition is based on the attached memorandum of points and authorities, the attached exhibits, all files and records in this case, including the Defendant's Original Petition to Withdraw His Guilty Plea, and any further information as may be presented at the hearing.

Dated: October 3, 2016          /s/ Karen L. Goldstein
                                         Law Offices of Karen L. Goldstein

TABLE OF CONTENTS

I. INTRODUCTION … 4

II. PROCEDURAL HISTORY … 5

   A. SPECIFIC GROUNDS FOR WITHDRAWAL … 6

III. APPLICABLE LAW … 7

IV. ARGUMENT … 8

   A. MR. REODICA HAS DEMONSTRATED A "FAIR AND JUST" REASON TO WITHDRAW HIS PLEA … 8

      1. Amount of Time Elapsed between Guilty Plea and Motion … 8

      2. Continued Assertion of Innocence … 9

      3. Voluntariness of the Plea … 10

      4. Prejudice to the Government's Case … 13

   B. AMENDMENTS TO MR. REODICA'S DECLARATION … 14

V. CONCLUSION … 15

TABLE OF AUTHORITIES

**Federal Cases**

*United States v. Doyle*, 981 F.2d 591, 594 (1st Cir. 1992)                                  8

*United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005)                           8

*United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998)                               7

*United States v. Ortega-Ascanio*, 376 F. 3d 883, 888 (9th Cir. 2004)              9

*United States v. Signori*, 844 F.2d 635, 637 (9th Cir. 1988)                              7

*United States v. Torres*, 129 F.3d 710, 715 (2nd Cir. 1997)                              8

**Federal Rules of Criminal Procedure**

Fed.R.Crim.P.11(d)(2)(B)                                                                                        7

## I. INTRODUCTION

Mr. Reodica was not in a healthy place mentally or physically when he entered his guilty plea on October 5, 2015.  He had recently fallen ill with the flu and was taking several prescription medications, including an antibiotic, Azithromycin, to help him recover from the flu and its debilitating symptoms.  (*See* Defendant's Declaration in Support of Petition to Withdraw His Guilty Plea at 24-25 [hereinafter "Decl."]); *see also* (Exh. A, Mr. Reodica's MDC Medical Records from October 1, 2015.)

At the change of plea hearing, Mr. Reodica felt physically unwell, and was also emotionally devastated, having recently learned of his father's rapidly declining health.  (Decl. at 24-25.)  The physical and emotional distress he experienced at this time, in combination with the effects of the new medication, compromised his judgment and his ability to appreciate the nature of the hearing and the consequences of his plea.  (Decl. at 27.)  Further, Mr. Reodica had come to court that day expecting to address only whether he would be proceeding *pro per* for his jury trial which was scheduled to commence the very next day.  As such he was unprepared for a guilty plea hearing.  Notably, for nearly three years prior, since his arrest in November 2012, Mr. Reodica had firmly maintained his innocence. (Decl. at 23.)

Lastly, on this same day, Mr. Reodica learned from his attorney, Mr. Callahan, that, "[they]…could not win the case." (Decl. at 20; Amended Decl. at 20.)  His attorney's unfavorable opinion, combined with Mr. Reodica's vulnerable physical and emotional state, placed additional pressure on him to enter a guilty plea.  All of these

DEFENDANT'S *SUPPLEMENTAL* MOTION TO WITHDRAW HIS GUILTY PLEA    4

unfortunate circumstances overwhelmed him and resulted in a flawed guilty plea where he did not understand or appreciate the consequences of his actions. (*See* Decl. at 27; Amended Decl. at 20.)

## II. PROCEDURAL HISTORY

On October 5, 2015, Mr. Reodica pleaded guilty to counts 1, 2, 4, 5, 6, 18, 19, 20, 22, 25, 26, 27, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 49 and 50 of the Indictment. He entered into an open plea before this Court without a written plea bargain and was represented by appointed counsel, Mr. Callahan.

On October 6, 2015, Mr. Reodica sought to withdraw his plea; however, the October 6, 2015 trial date had been vacated so Mr. Reodica was not brought before the Court and was unable to petition the Court for the requested relief. (Decl. at 28.) Mr. Reodica then proceeded to voice his concerns to both family, and to Mr. Callahan, for several months, until he personally wrote a Petition to Withdraw Guilty Plea on February 28, 2016 and requested for counsel to file it on his behalf. (Decl. at 29.)

On April 30, 2016, Mr. Reodica, through his counsel of record, Richard Callahan, lodged a Petition to Withdraw His Guilty Plea. (Docket No. 135.) On July 22, 2016, CJA counsel, Karen L. Goldstein, was appointed as special counsel by this Court to represent Mr. Reodica for all proceedings pertaining to Mr. Reodica's Petition to Withdraw His Guilty Plea. Counsel respectfully submits Defendant's Supplemental Motion to Withdraw His Guilty Plea on behalf of Mr. Reodica.

**A. SPECIFIC GROUNDS FOR WITHDRAWAL**

In Mr. Reodica's original Petition to Withdraw His Guilty Plea, he laid out several specific grounds in support of the requested relief, including, that on the date of the change of plea (October 5, 2015):

1) He was physically ill with the flu and on prescription medication which compromised his judgment and affected his ability to understand the consequences of his plea. (Decl. at 24; 27);

2) He was emotionally distraught due his father's rapidly deteriorating medical condition which also compromised his judgment and affected his ability to understand the consequences of his plea. (Decl. at 25; 27);

3) He was unprepared to enter a guilty plea because he came to court expecting to address only whether he would represent himself *pro per* and believed his jury trial would start the next day; (Decl. at 22);

4) There were numerous meritorious and dispositive motions that should have been argued on his behalf before he decided whether or not to enter a guilty plea (Decl. at 26);

5) He was advised by his attorney on the same day as the change of plea that "they could not win the case" and this legal advice placed additional pressure on him to enter into a guilty plea (Amended Decl. at 20); and

6) As a result of Mr. Reodica's medical and emotional instability, including feeling the effects of the flu and prescription antibiotics, the distress of his father's failing

health, his belief that the hearing was scheduled to determine whether he would represent himself, his assertion of innocence, and his counsel's unfavorable opinion of the case, Mr. Reodica's judgment was compromised and he was unable to understand the nature of his guilty plea and the constitutional rights that he waived. (Decl. at 24-28.)

In sum, Mr. Reodica argues that the totality of the circumstances provide a "fair and just reason" to withdraw his guilty plea because he was unable to understand the consequences of his guilty plea and the waiver of his constitutional trial rights. *See generally* Fed.R.Crim.P.11(d)(2)(B).

### III.        APPLICABLE LAW

Federal Rule of Procedure 11(d)(2)(B) states that a defendant may withdraw his guilty plea before sentencing if he can demonstrate a "fair and just reason" for requesting the withdrawal. Fed.R.Crim.P.11(d)(2)(B). The Ninth Circuit has further articulated that a motion to withdraw a guilty plea made before sentencing should be "freely allowed" and that the "fair and just reason" standard should be "applied liberally." *United States v. Nagra*, 147 F.3d 875, 880 (9th Cir. 1998); *United States v. Signori*, 844 F.2d 635, 637 (9th Cir. 1988.)

The Ninth Circuit has also clarified that a defendant does not need to prove that his plea was invalid in order to withdraw his or her plea. *See Signori* at 635 ("A fair reading of the broad language of Rule 11(d)(2)(B*)* . . . establishes that a defendant need not prove that his plea is invalid in order to meet his burden of establishing a fair and just

reason for withdrawal."); *see also United States v. Garcia,* 401 F.3d 1008, 1011 (9th Cir. 2005) (holding that the "fair and just reason" standard is simply more generous than the standard for determining whether a plea is invalid.)

In the instant case, there are numerous factors which this Court may consider in order to evaluate whether Mr. Reodica has put forth a "fair and just reason" for his plea withdrawal, including: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant is asserting his innocence; (3) the likely voluntariness of the plea; and (4) any prejudice to the government. *United States v. Torres,* 129 F.3d 710, 715 (2nd Cir. 1997); *United States v. Doyle,* 981 F.2d 591, 594 (1st Cir. 1992). In the instant case, each of these factors weighs in favor of Mr. Reodica's motion.

## IV. ARGUMENT

### A. MR. REODICA HAS DEMONSTRATED A FAIR AND JUST REASON TO WITHDRAW HIS PLEA

Analyzing each factor in turn, Mr. Reodica has demonstrated a "fair and just reason" that his plea should be withdrawn.

#### 1. Amount of Time Elapsed between Guilty Plea and Motion

First, regarding the amount of time that had elapsed between the entry of the plea and Mr. Reodica's motion—Mr. Reodica sought to withdraw his guilty plea the very next day. (Decl. at 28.) Thus, the amount of time which elapsed between his plea and his motion should have been one day; however, on October 6, 2015, Mr. Reodica was transported by the U.S. Marshals but was not ultimately brought before the Court because the trial date had been vacated the previous day. (Decl. at 28.) On this same date, Mr.

DEFENDANT'S *SUPPLEMENTAL* MOTION TO WITHDRAW HIS GUILTY PLEA

8

Reodica realized the gravity of the mistake he had made the day before and erroneously believed that there was a court hearing where he would be able to voice his concerns and to withdraw his plea. (Decl. at 28.) Of course, Mr. Reodica no longer had a scheduled hearing and was not brought before the Court. As such, he was unable to immediately petition the Court to withdraw his plea.

Further, Mr. Reodica asserts that despite repeated requests since this day, his counsel did not assist him with filing the motion. (Decl. at 29.) As such, Mr. Reodica was unable to formally petition the Court in writing until February 28, 2016, and the Petition was not actually lodged until April 30, 2016. (Docket No. 135.) Thus, despite the delay in the actual lodging/filing of the original Petition, the amount of time which lapsed between Mr. Reodica's entry of his guilty plea, and his attempt to withdraw the guilty plea, was actually one day. In conclusion, this short amount of time is a factor which weighs in favor of the motion.

### 2. Continued Assertion of Innocence

Second, regarding the defendant's assertion of innocence, from the very inception of the case, Mr. Reodica asserted his innocence and declared that he wished to go to trial. This is a factor which the Court should strongly consider. *See United States* v. *Ortega-Ascanio*, 376 F. 3d 883, 888 (9th Cir. 2004) (holding that a defendant's claim of innocence may be considered a "fair and just" reason for withdrawal of a plea.) In fact, due to an inadvertent arraignment error, Mr. Reodica had recently pleaded not guilty, on October 2, 2015, a mere three days before. (Docket 138, October 2, 2015, Tr. at 41: 23-25.)

DEFENDANT'S *SUPPLEMENTAL* MOTION TO WITHDRAW HIS GUILTY PLEA              9

Further, it is significant when analyzing this factor to take into consideration that a jury trial had been scheduled for the very next day, October 6, 2015. Therefore, the last-minute timing of the guilty plea, on October 5, 2015, corroborates Mr. Reodica's contention that he has always maintained his innocence and that he only pleaded guilty due to an unfortunate, and overwhelming, series of physical and emotional circumstances. In sum, Mr. Reodica's continued assertion of innocence also mitigates in favor of his motion.

### 3. Voluntariness of the Plea

Third, and most significantly, the Court should consider the voluntariness of the plea. Mr. Reodica has articulated several factors, which analyzed together, raise serious concerns regarding the voluntary nature of his plea. *See Brady v. United States,* 397 U.S. 742, 748 (emphasizing that a defendant's showing that his plea was not voluntary is "the most important factor" in support of a withdrawal but was not a prerequisite.) At the change of plea hearing Mr. Reodica was suffering from the flu and taking antibiotics while simultaneously experiencing emotional distress at learning of his father's failing health and being swayed by his counsel's advice that the case could not be won. (Decl. at 24-28); *see also* (Docket 138, October 5, 2015, Transcript of Record, at 15:16-25; 16:1-5.) [Hereinafter "Tr."]

Notably, from the very beginning of the change of plea hearing, there were indicia of hesitation, involuntariness, and lack of understanding, on Mr. Reodica's part. The Court initially asked whether Mr. Reodica would be pleading to Counts 1, 2, 4, 5, 6, 18,

19, 20, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 38, 40, 49, 50 of the Indictment. Mr. Reodica asked to confer with counsel before responding to this basic question. (Tr. at 9:22-25; 10: 1-9.) Then, once Mr. Reodica was sworn under oath, the Court inquired whether Mr. Reodica was taking any medications. (Tr. at 16:1-25.) Mr. Reodica indicated that he was taking several medications: antibiotics for the flu, heart medication for palpitations, high blood pressure medication, and medication for his prostate. (Tr. at 16:1-25.) The Court further asked whether he felt the effects of these medications. Mr. Reodica stated "No Your Honor" but he also added, "I have been taking it daily for several years already, *except for the flu*." (Tr. at 16:24-25.) As such, Mr. Reodica made a point of clarifying, on the record, that the flu medication (and its effects) were new for his body. (Tr. at 16:24-25.) In support of this argument, Exhibit A, has been attached to the instant motion: Mr. Reodica's MDC medical records. These medical records indicate that he had been prescribed antibiotics—Azithromycin (250mg pills)—and that this regimen appears to have commenced on October 1, 2015, a mere four days before the hearing. (Exh. A.)

In response to further questioning regarding his medical condition, Mr. Reodica stated that he felt well enough to proceed and that he was not suffering from "any physical condition, mental condition, or emotional condition" that would have affected his understanding of the hearing. (Tr. at 17:1-3; Tr. at 17:4-7.) Further, the Court later asked if Mr. Reodica felt well enough to enter his plea and he responded in the affirmative. (Tr. at 31:4-6.) However, herein lies the problem and the heart of this

motion: Mr. Reodica was too overwhelmed by physical and emotional distress, as well as the effects of his prescription medication and his counsel's advice, to understand the nature of all the Court's questions and to respond accurately and meaningfully at the plea colloquy. (Decl. at 25; 27.) Mr. Reodica was not clear-headed enough, either physically or emotionally, to answer questions regarding his ability to proceed with the change of plea. Therefore, his answers at the change of plea hearing should not be given their normal weight.

In support of Mr. Reodica's arguments, there are several additional indicia of hesitation, involuntariness, and lack of comprehension, on Mr. Reodica's part, which occurred throughout the change of hearing. For example, there was a pause in the proceedings after the government explained how the Court could use its discretion to sentence Mr. Reodica up to the statutory maximum. (Tr. at 23:9-21.) At this juncture, Mr. Reodica requested to speak to his attorney. In response to the request, counsel and Mr. Reodica conferred off the record. (Tr. at 23:19-21.) This pause, after a discussion of penalty, is a potential indicia that communication was not clear and/or that there was confusion, or hesitation, on Mr. Reodica's part.

Then, later on in the proceedings, when asked, "And is everything that the Government said about you and your conduct and intent true and correct?" Mr. Reodica again requested to confer with his counsel, expressing more hesitation and/or possible lack of comprehension. (Tr. at 40:20-25.) This specific hesitation corroborates Mr. Reodica's position that he had consistently maintained his innocence and only entered a

guilty plea due to a combination of physical and emotional distress further compounded by the negative opinion of his counsel.

There are numerous other examples from the hearing which also demonstrate hesitation, lack of comprehension, or involuntariness on Mr. Reodica's part. For example, towards the end of the hearing, when the Court asked if Mr. Reodica was guilty of each count, he answered, "At the present time, yes sir, Your Honor?" (Tr. at 41:18-19.) Although the Court asked a follow-up question, to try to clear up any ambiguity, Mr. Reodica's initial, and intuitive, answer was very cryptic. It is a reply which suggests hesitation or lack of comprehension. And finally, when the Court asked if Mr. Reodica had any additional questions about the plea generally, he again asked to confer with counsel. (Tr. at 42:2-8.)

As such, looking at the totality of the circumstances—Mr. Reodica's unclear responses and frequent requests to confer with counsel, coupled with his physical and emotional distress, his continued assertion of innocence, as well as the negative advice of his counsel the day before his scheduled jury trial—there exist serious doubts as to the voluntary nature of the plea. In conclusion, the voluntariness (or lack thereof) of the plea also weighs in favor of Mr. Reodica's motion.

**4. <u>Prejudice to the Government's Case</u>**

Fifth, with respect to potential prejudice to the government, it is unlikely that proceeding to trial one-and-a-half years after the change of plea hearing would prejudice

DEFENDANT'S *SUPPLEMENTAL* MOTION TO WITHDRAW HIS GUILTY PLEA

13

the government in any meaningful way.[1]  This case was originally filed in 1994.  As such, given that over 20 years has elapsed since the case was first filed, any issues with obtaining witness statements, or evidence, would have been challenges which the government would have already encountered, and which would not be made significantly worse by an additional one-and-a-half year delay.  As such, this factor also supports Mr. Reodica's motion.

In conclusion, looking at the totality of the circumstances, including the case being set for trial, Mr. Reodica previously asserting his innocence since 2012, Mr. Reodica experiencing both physical and mental distress at the time of the hearing, taking antibiotics that were new for his body, repeatedly asking to speak with counsel during the plea colloquy, providing several cryptic responses, and being advised by counsel that he could not win the case, Mr. Reodica has demonstrated a  "fair and just reason" for withdrawing his plea.

**B. AMENDMENTS TO MR. REODICA'S DECLARATION**

In support of this Supplemental Petition, Mr. Reodica would like to make the following amendments to his previously filed Declaration in Support of Petition to Withdraw His Guilty Plea (Decl. at 20; Decl. at 24):[2]

20. Defendant was also advised by his legal counsel that "we could not win this case" which conclusion the defendant did not agree with. Defendant requested for a recess to confer with his legal counsel.  *His counsel's negative opinion of the case placed additional pressure on him to enter a guilty plea on that date.*

---

[1] Assuming that a trial date would be set within a few months of this Petition.
[2] New or amended language is listed in italics.

24. *Starting on October 1, 2015*, defendant became sick with flu that necessitated a regimen of antibiotics—*Azithromycin (250mg)*. *He began taking these antibiotics on October 1, 2015*. (The defendant's father, Eminiano Reodica, Sr. also became seriously ill due to a lingering lung problem exacerbated by the winter weather. He passed away in November 2015).

As such, counsel respectfully requests for the above amendments to be made to Mr. Reodica's declaration so as to conform with the attached medical records (Exh. A) and with Mr. Reodica's recollection of events.

## V. CONCLUSION

In conclusion, counsel respectfully requests that the Court grant Mr. Reodica's motion because the totality of the circumstances demonstrate a "fair and just reason" for withdrawing his plea.

Dated: October 3, 2016          /s/ Karen L. Goldstein
                                Law Offices of Karen L. Goldstein
                                Attorney for Defendant, Eminiano Reodica

# MR. REODICA'S *AMENDED* DECLARATION
# IN SUPPORT OF PETITION TO WITHDRAW GUILTY PLEA

I, Eminano Reodica, hereby declare and state:

20. Defendant was also advised by his legal counsel that "we could not win this case" which conclusion the defendant did not agree with. Defendant requested for a recess to confer with his legal counsel. *His counsel's negative opinion of the case placed additional pressure on him to enter a guilty plea on that date.*

24. *Starting on October 1, 2015*, defendant became sick with flu that necessitated a regimen of antibiotics—*Azithromycin (250mg). He began taking these antibiotics on October 1, 2015.* (The defendant's father, Eminiano Reodica, Sr. also became seriously ill due to a lingering lung problem exacerbated by the winter weather. He passed away in November 2015.)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 19th day at September , California.



Eminiano Reodica